UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS M. FRANCIS, Jr. )
14830 Statler Drive )
Woodbridge, VA 221903, )
                          )
         Plaintiff, )
                          )
       v. )
                          )   Civil Action No._____
DISTRICT OF COLUMBIA )
Office of the Mayor )
1350 Pennsylvania Avenue, N.W. )
Washington, D.C. )
                          )
       and )
                          )
OFFICE OF PROPERTY )
MANAGEMENT )
441 4th Street, N.W., Suite 1100 South )
Washington, D.C. 20001 )
                          )
         Defendants. )
                          )

## COMPLAINT
### (Employment discrimination)

Thomas M. Francis, Jr., for his Complaint against the Defendants, District of Columbia and the Office of Property Management, hereby states as follows:

### JURISDICTION AND VENUE

1.   This is an action for damages and injunctive relief for race discrimination and retaliation by the Defendants in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. (hereafter "Title VII"), and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01, et seq. (hereafter "D.C.H.R.A."). This Court has jurisdiction under section 706(f)(3)

of Title VII (42 U.S.C. § 2000e-5(f)(3)), 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental). Jurisdiction of this Court is also based on 28 U.S.C. §1332, because there is complete diversity of citizenship between plaintiff and all defendants, and since the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs. Venue lies in this judicial district pursuant to 28 U.S.C. §§1391(a)(1), (a)(2).

2.    Mr. Francis filed a timely charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination on the part of OPM and the District of Columbia in connection with the termination of his position as Chief, D.C. Protective Services. Pursuant to a "work-sharing agreement," EEOC filed Mr. Francis' charge with the District of Columbia's Office of Human Rights, which agreed to defer its investigation of the charge, pending investigation by the EEOC. Thereafter, EEOC investigated Mr. Francis' allegations. On September 15, 2005, the EEOC issued a finding of probable cause. Subsequently, conciliation having failed, the EEOC referred Mr. Francis' charge to the Department of Justice, pursuant to 42 U.S.C. § 2000e(f)(1). On August 9, 2007, the Department of Justice issued Mr. Francis a Notice of Right to Sue. Thereafter, pursuant to D.C. Code § 2-1403.16 (a)(2007), Mr. Francis, by counsel, notified the Office of Human Rights of his intention to file suit against the Defendants under the D.C. Human Rights Act.

## PARTIES

3.    The Plaintiff, Thomas M. Francis, Jr. resides at 14830 Statler Drive, Woodbridge, Virginia 22193.

4. Defendant, District of Columbia, is a municipal corporation created by Congress with authority to sue and be sued. *See* Section 1-102, District of Columbia Code (2007). The Office of Property Management ("OPM") is an agency of the District of Columbia government. D.C. Protective Services (hereafter "PSD") is a division of OPM. At all times pertinent to this litigation, PSD has been charged with providing security to the personnel and property of the District of Columbia. The District of Columbia and OPM are employers within the meaning of Title VII of the Civil Rights Act of 1964 and the D.C. Human Rights Act.

## COMMON FACTUAL ALLEGATIONS

5. In October of 1999 Thomas Francis was hired by OPM as Chief of PSD. Prior to becoming Chief, Mr. Francis had achieved considerable success working as a security executive. Immediately prior to assuming his position with OPM, Mr. Francis had been employed by Mobil Oil Corporation as head of its security department, with responsibility for its facilities in Northern Virginia. Mr. Francis sat on several review boards as a security expert for the selection of security contractors and executive level security management positions.

6. At the time Mr. Francis assumed his responsibilities at OPM, Kenneth Kimbrough, the head of the agency, was concerned over the efficacy of PSD. Based on this concern, he directed Mr. Francis to conduct an analysis of the division's operations and make appropriate recommendations. In due course, Mr. Francis developed a five year plan of action that included a complete revision of the division's operating procedures and a number of major personnel

realignments. The new procedures recommended by Mr. Francis were implemented and remain in place today.

7. As a consequence of improvements in its operations put in place by Mr. Francis, PSD became a respected authority in matters related to physical security, within the federal government and in the District of Columbia. It was called on by the U.S. Department of Housing and Development and the U.S. Holocaust Museum to review and comment on their security programs, and was put in charge of maintaining order during the Anthrax screening of over 15,000 people related to the tainted letters delivered to the U.S. Senate. Its methods of controlling the flow and keeping large numbers of people orderly in a tense and fearful environment were largely adopted by the U.S. Department of Health and Human Services and the Center for Disease Control. PSD was a major and critical player in all the new disaster plans developed by the District of Columbia after 9/11.

8. At the time Mr. Francis was hired by OPM, the position of Chief, D.C. Protective Services was a grade 14 "career service" position. Sometime in 2000 the position was upgraded to grade 15 and transferred to a newly created classification of managerial employees, named Management Supervisory Services ("MSS").

9. Pursuant to regulations adopted by the Defendants, each MSS executive is to work under a "Performance Plan" and is to receive an annual "Performance Rating," which measures his or her performance against the

provisions of the Plan. See CDCR §§ 6-3816.1, 6-1400.1(c), 6-1404, and 6-1405.2.

10. Throughout the period of his incumbency, Mr. Francis received high performance ratings, as a consequence of which his salary went from $78,000 annually at the outset of his employment to $98,000 annually at the time of the termination of his employment.

11. At the time of the events giving rise to this Complaint, Deputy Mayor Herbert Tillery, an African American, had overall responsibility for OPM. Under Mr. Tillery, Marceline Alexander, also an African American, served first as chief of staff and subsequently as Acting Director of OPM. Virtually all of the personnel let go by Mr. Tillery and Ms. Alexander were white, while all of the personnel hired into positions of any significance were African American.

12. Shortly after assuming her responsibilities at OPM, Ms. Alexander embarked on a pattern of attacking Mr. Francis and manufacturing unwarranted criticism of his work.

13. On July 14, 2003, Mr. Francis was informed by his Deputy, Arnold Bracey, that he was to report to the office of Ms. Alexander, who was by then Acting Director of OPM. He was instructed to surrender his gun to Mr. Bracey prior to the meeting. Once in Ms. Alexander's office Mr. Francis was informed that he was to be summarily dismissed. No reasons for this action were given, then or ever. Mr. Francis was immediately stripped of his badge; his credentials were confiscated; and he was directed to leave the premises immediately.

Several of his subordinates were on hand, having been instructed to ensure his prompt departure.

14. At no time prior to his termination had Mr. Francis' work been evaluated as deficient in any way.

15. After terminating Mr. Francis, OPM replaced him with an African American, Plez Jenkins, who was unqualified for the job. The vacancy left by Mr. Francis' termination was first posted as a Grade 15. However, since Plez Jenkins, the candidate favored by Mr. Tillery and Ms. Alexander, was serving elsewhere in the District government in a Grade 13 position, OPM withdrew its initial posting and downgraded the Chief's position from Grade 15 to Grade 14 in order to accommodate Mr. Johnson's manifestly inadequate qualifications.

16. As a consequence of the foregoing actions, Mr. Francis has suffered severe and ongoing humiliation, embarrassment and indignity. In carrying out her dismissal of Mr. Francis, Marceline Alexander acted in a needlessly hostile and insulting manner: requiring Mr. Francis to surrender his gun, to physically remove the badge from his uniform, to give up his identification, and then to walk through the halls of the facility wearing a uniform shirt with no badge and physically escorted by two of his own subordinate officers. These actions had the intended effect of creating the impression that Mr. Francis had committed some egregious act of moral turpitude or committed a crime, so as to warrant his abrupt and humiliating dismissal.

17. When Mr. Francis declined to execute a letter of resignation and a release of all claims, Marceline Alexander accelerated her efforts to discredit and

humiliate Mr. Francis. She directed PSD personnel to investigate his work, openly searching for examples of misuse of authority, improper use of funds and/or anything else she could use to justify his dismissal. Although these unwarranted actions disclosed no evidence of wrongdoing or inadequate performance, they nonetheless did irreparable damage to Plaintiff's reputation and to his future efforts to secure employment in the security industry.

18. As a consequence of Ms. Alexander's intentionally damaging actions, Mr. Francis' upwardly mobile career path has been interrupted, perhaps permanently, causing him grave anxiety over his ability to support his wife and children. Mr. Francis' previously excellent reputation in the close-knit security field has been irreparably damaged, and he has been unable to find new employment in that field, despite extensive effort. Although he has had a number of initially positive contacts with possible employers in the security field, all leads have ended when the potential employer contacted the Defendants for references.

19. In addition to the professional humiliation visited on Mr. Francis by the actions of the Defendants, Mr. Francis has suffered additional humiliation in the eyes of his family and friends.

20. As a consequence of the foregoing, Mr. Francis has suffered severe mental distress with harmful byproducts: frequent nightmares; difficulty sleeping; and high blood pressure.

21. In addition to the foregoing, Mr. Francis' anxiety and humiliation have caused problems in his personal relationships.

## COUNT I
(Race discrimination in violation of Title VII)

22. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 21 hereof.

23. The Defendants terminated the employment of the Plaintiff because of his race (white) in violation of Title VII of the Civil Rights Act of 1964, as amended.

24. In taking the foregoing actions, the Defendants materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining employment with other law enforcement agencies; stigmatized Plaintiff; and damaged Plaintiff's professional reputation and standing in the community of law enforcement agencies in which he was formerly employed.

25. The actions taken by the Defendants against the Plaintiff were carried out with knowledge that they were in violation of the law and with the malicious intent to injure the Plaintiff.

26. The Defendants' violation of Title VII caused the Plaintiff to sustain financial damages in lost salary and future earnings, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of the Defendants' termination of plaintiff's employment.

27. As a consequence of the actions of the Defendants, the Plaintiff has suffered severe mental distress.

## COUNT II
### (Race discrimination in violation of the District of Columbia Human Rights Act)

28. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 27 hereof.

29. The Defendants terminated the employment of the Plaintiff wholly or partially because of his race (white) in violation of the District of Columbia Human Rights Act.

30. In taking the foregoing actions, the Defendants materially and adversely altered the terms, conditions, and privileges of Plaintiff's employment and Plaintiff's future employment opportunities; foreclosed Plaintiff from obtaining employment with other law enforcement agencies; stigmatized Plaintiff; and damaged Plaintiff's professional reputation and standing in the community of law enforcement agencies in which he was formerly employed.

31. The Defendants' violation of the DCHRA caused the Plaintiff to sustain financial damages in lost salary and future earnings, and other reasonably foreseeable consequential damages incurred as a natural and proximate result of the Defendants' termination of Plaintiff's employment.

32. The Defendants' violation of the DCHRA caused plaintiff to suffer non-pecuniary injuries taking the form of emotional pain, embarrassment, humiliation, mental anguish, loss of professional reputation, and loss of enjoyment of life.

33. The Defendants' act of discharging plaintiff was egregious and taken in conscious disregard of or with deliberate indifference to plaintiff's rights under the

DCHRA, outrageously, wantonly, and oppressively; and with legal and actual malice.

## COUNT III
### (Retaliation in violation of Title VII)

34. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 33 hereof.

35. Following the termination of his employment, as described above, Plaintiff filed charges of discrimination against the Defendants with the EEOC and the Office of Human Rights.

36. On information and belief, the Defendants have consistently responded to inquiries from prospective employers regarding the Plaintiff by providing falsely negative references, in retaliation for Plaintiff's exercise of his rights under Title VII.

37. The Defendants violated the participation clause of Title VII, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3(a)), by retaliating against the Plaintiff in the manners described above.

38. As a consequence of the foregoing actions of the Defendants, Plaintiff has suffered significant monetary losses in the form of lost employment opportunities.

39. As a consequence of the actions of the Defendants, the Plaintiff has suffered severe mental distress, as well as ongoing humiliation, embarrassment and indignity.

## COUNT IV
### (Retaliation in violation of Title VII)

40. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 39 hereof.

41. Following the termination of Plaintiff's employment, as described above, the Defendants requested that he release his claims of discrimination under Title VII. When the Plaintiff refused, the Defendants retaliated against him by deliberately damaging his reputation among his peers in the security industry, thereby making it essentially impossible for the Plaintiff to continue his career in his chosen field.

42. The Defendants violated the participation clause of Title VII, 42 U.S.C. §2000e-16 (incorporating by reference 42 U.S.C. §2000e-3(a)), by retaliating against the Plaintiff in the manner described above.

43. As a consequence of the actions of the Defendants, the Plaintiff has suffered significant monetary losses in the form of lost employment opportunities.

44. As a consequence of the actions of the Defendants, the Plaintiff has suffered severe mental distress, as well as ongoing humiliation, embarrassment and indignity.

## COUNT V
### (Retaliation in violation of the District of Columbia Human Rights Act)

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 hereof.

46. Following the termination of his employment, as described above, the Plaintiff filed charges of discrimination against the Defendants with the EEOC and the Office of Human Rights.

47. On information and belief, the Defendants have consistently responded to inquiries from prospective employers regarding the Plaintiff by providing falsely negative references, in retaliation for Plaintiff's exercise of his rights under the DCHRA.

48. The Defendants violated the anti-retaliation provisions of the DCHRA by retaliating against plaintiff in the manner described above.

49. As a consequence of the actions of the Defendants, the Plaintiff has suffered significant monetary losses in the form of lost employment opportunities.

50. As a consequence of the actions of the Defendants, the Plaintiff has suffered severe mental distress, as well as ongoing humiliation, embarrassment and indignity.

## COUNT VI
**(Retaliation in violation of the District of Columbia Human Rights Act)**

51. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 50 hereof.

52. Following the termination of Plaintiff's employment, as described above, the Defendants requested that he release his claims of discrimination under the DCHRA. When the Plaintiff refused, the Defendants retaliated against him by deliberately damaging his reputation among his peers in the security industry, thereby making it essentially impossible for the Plaintiff to continue his career in his chosen field.

53. The Defendants violated the anti-retaliation provisions of the DCHRA by retaliating against plaintiff in the manner described above.

54. As a consequence of the actions of the Defendants, the Plaintiff has suffered significant monetary losses in the form of lost employment opportunities.

55. As a consequence of the actions of the Defendants, the Plaintiff has suffered severe mental distress, as well as ongoing humiliation, embarrassment and indignity.

WHEREFORE, Plaintiff respectfully requests that the court enter judgment in his favor and against the Defendants, declaring that the Defendants have violated his rights under Title VII and the D.C. Human Rights Act, and awarding him back pay, compensatory and punitive damages and attorneys fees, and reinstating him to his position, and such other and further relief as the court may deem appropriate.

Respectfully submitted,

_____
Woodley B. Osborne, Esq.
Bar no. 043406
Suite 300
1250 Connecticut Avenue, N.W.
Washington, D.C. 20036
202-822-5100

Robert C. Seldon, Esq.
Bar no. 245100
Robert C. Seldon & Associates, Inc.
1319 F Street NW, Suite 305
Washington, D.C. 20004
202-955-6968

Counsel for the Plaintiff

Dated: August 15, 2007

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**
Thomas M. Francis, Jr.

**DEFENDANTS**
District of Columbia
Office of Property Management, and agency of the District of Columbia

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Woodley B. Osborne
Suite 300
1250 Connecticut Ave., N.W.
Washington, D.C. 20036
202-822-5100

Case: 1:07-cv-01473
Assigned To : Bates, John D.
Assign. Date : 8/15/2007
Description: EMPLOY DISCRIM.

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

○ **A.** *Antitrust*
☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C.** *Administrative Agency Review*
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*
Any nature of suit from any category may be selected for this category of case assignment.
*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/* 2255<br><br>☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ● H. *Employment Discrimination*<br><br>☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT*<br><br>☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ○ J. *Student Loan*<br><br>☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)*<br><br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)*<br><br>☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ○ M. *Contract*<br><br>☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ○ N. *Three-Judge Court*<br><br>☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

● 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Race discrimination and retaliation (employment) in violation of 42 USC sec. 2000e, et seq. and D.C. Code sec. 2-1401.01 et seq.

| VII. REQUESTED IN COMPLAINT | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | DEMAND $ _____ JURY DEMAND: | Check YES only if demanded in complaint YES ☐  NO ☒ |
|---|---|---|---|
| VIII. RELATED CASE(S) IF ANY | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form. |
| DATE August ___, 2007 | SIGNATURE OF ATTORNEY OF RECORD | *[signature]* | |

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

  I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

  III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

  IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

  VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

  VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.